UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADER AMER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WELLS FARGO BANK NA,<br><br>　　　　　Defendant. | Case No. 17-cv-03872-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 19 |

## I.　INTRODUCTION

Plaintiff Nader Amer brings this action under the California Homeowner's Bill of Rights (the "HBOR"), as well as other statutory and common law claims, against Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo moves to dismiss all claims. The Court held a hearing on October 27, 2017. For the reasons discussed below, Wells Fargo's motion is GRANTED in part and DENIED in part. If Amer wishes to pursue claims or theories dismissed without prejudice, he may file a second amended complaint consistent with this order no later than November 13, 2017.[1]

## II.　BACKGROUND

### A.　Allegations of the First Amended Complaint

Amer has at all relevant times owned and resided at property located at 33919 Milton Street in Fremont, California. 1st Am. Compl. ("FAC," dkt. 15) ¶ 1. In 2007, Amer obtained a loan of $755,725 from World Savings Bank, FSB, secured by a deed of trust. *Id.* ¶ 26 & Ex. A. That loan was later assigned to Wells Fargo, which "purports to be the servicer of the [loan]." *Id.* ¶¶ 28–29.

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

Amer experienced financial hardship in 2009 and began to fall behind on his mortgage payments in 2010. *Id.* ¶ 30. Wells Fargo "caused a Notice of Default to be recorded on or about August 4, 2010" in the Alameda County Recorder's Office, without Amer's knowledge; Amer alleges that he received no telephone calls or voicemail messages from Wells Fargo before Wells Fargo recorded the notice. *Id.* ¶¶ 31–32 & Ex. B. After Amer learned of the notice of default, he contacted Wells Fargo repeatedly over a period of multiple years to request assistance with alternatives to foreclosure, but Wells Fargo has not provided any such assistance, and its representatives have instead repeatedly asked Amer to provide the same information and documents that he previously submitted. *Id.* ¶¶ 33–35.

In 2016, Amer "experienced a significant change in his financial situation, and pursuant to [Wells Fargo's] request, he submitted a complete loan modification application to [Wells Fargo] in or around September 2016" outlining his "financial hardships." *Id.* ¶ 36. When Amer attempted to follow up on the status of his application, Wells Fargo did not assign a single point of contact for his inquiries but instead "shuffled" Amer's telephone calls "from one representative to another," none of whom were knowledgeable about his application. *Id.* ¶¶ 37–38. On November 16, 2016, a Wells Fargo representative whom Amer reached by telephone told him "that his loan modification was allegedly denied because he had 'too much income.'" *Id.* ¶ 39. Amer never received a written denial letter explaining the reasons for denial or advising him of his right to appeal a denial. *Id.* ¶ 40. Amer believes that the telephone representative was mistaken and that his application remains pending. *Id.* ¶ 42.

At the time that the representative told Amer that his application had been denied, Wells Fargo had scheduled a trustee's sale and refused to postpone it. *Id.* ¶ 39. Wells Fargo moved forward with the foreclosure process and instructed an agent to record a notice of trustee's sale, which the agent recorded with the Alameda County Recorder on February 6, 2017, setting the sale for February 27, 2017. *Id.* ¶ 41 & Ex. C. When Amer filed his operative amended complaint in July of 2017, he believed that Wells Fargo "intend[ed] to foreclose upon the Subject Property on August 18, 2017." *Id.* ¶ 45.

Amer requested a "detailed accounting" of his loan from Wells Fargo but has not yet

2

received "an accurate accounting." *Id.* ¶ 44.

Amer's present complaint includes six claims. First, he asserts that Wells Fargo violated the HBOR, specifically California Civil Code section 2923.6, by dual tracking his application and recording a notice of sale while the application was pending. *Id.* ¶¶ 46–64. Amer notes that section 2923.6(f)(2) requires a mortgage servicer to send a written notice identifying the reasons why an application was denied, although he does not allege that Wells Fargo violated that section by denying the application without such notice—as discussed above, Amer alleges that the application in fact remains pending. *Id.* ¶¶ 42, 48. Second, Amer asserts that Wells Fargo violated section 2923.7 of the Civil Code by failing to assign a single point of contact for communication regarding Amer's efforts to avoid foreclosure. *Id.* ¶¶ 65–78. Third, Amer asserts that Wells Fargo was negligent in failing to review his modification application in good faith and in a timely manner, failing to assign a competent single point of contact, "misleading" Amer regarding his right to appeal, failing to send written notice of denial or an accurate accounting, and proceeding with a dual-tracked foreclosure in violation of public policy. *Id.* ¶¶ 79–86. Fourth, Amer asserts that the misconduct described above constitutes unfair and unlawful business practices in violation of California's Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200. *Id.* ¶¶ 87–91. Fifth, Amer asserts that Wells Fargo failed to contact him as required by Civil Code section 2923.55 before recording a notice of default. *Id.* ¶¶ 92–101. Finally, Amer brings a claim for an accounting that he contends is required by Civil Code section 2943. *Id.* ¶¶ 102–06.

### B. Procedural History and Present Arguments

Amer filed this action in the Superior Court of California for Alameda County, and Wells Fargo removed to this Court based on diversity jurisdiction. *See* Notice of Removal (dkt. 1). After Wells Fargo moved to dismiss Amer's original complaint, *see* dkt. 7, Amer filed the currently operative First Amended Complaint pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. *See generally* FAC. Wells Fargo now moves to dismiss the amended complaint. *See generally* Mot. (dkt. 19).

**1. Wells Fargo's Motion and Request for Judicial Notice**

According to Wells Fargo, after it recorded the notice of default in 2010, it recorded five successive notices of trustee's sale. *Id.* at 1; Def.'s Req. for Judicial Notice ("RJN," dkt. 20) Exs. I–M.[2] Wells Fargo also contends that, "[i]n an apparent strategy to avoid foreclosure," Amer filed for bankruptcy six times from 2011 through 2016 and subsequently transferred his interest in the property to his wife, who filed for bankruptcy twice in 2017. Mot. at 2–3; RJN Exs. N–DD. Two of Amer's bankruptcy cases were dismissed for failure to file required schedules, and in three others he failed to include any claims against Wells Fargo on his schedules of assets, which require disclosure of such claims. Mot. at 2–3; RJN Exs. O, Q, T, V, X. It is not clear whether Amer scheduled any claims in his sixth and final bankruptcy action, but the bankruptcy court "promptly dismissed" that case and barred him from filing additional bankruptcy petitions for a period of nine months. Mot. at 3; RJN Ex. AA. Amer's wife's bankruptcy cases were each dismissed, and Wells Fargo obtained relief from the stay imposed by her second petition. Mot. at 3; RJN Exs. BB–DD. Wells Fargo argues that all of Amer's claims are barred by judicial estoppel because he failed to disclose them in his serial bankruptcy cases, citing a number of district court decisions dismissing claims that plaintiffs failed to list on bankruptcy schedules. Mot. at 5–6 (citing, *e.g.*, *Swendsen v. Ocwen Loan Servicing*, No. 2:13-cv-02082 TLN-CKD, 2014 WL 1155794, 2014 U.S. Dist. LEXIS 37780 (C.D. Cal. Mar. 21, 2014)).

Turning to the particular claims of Amer's complaint, Wells Fargo contends that Amer's first and second claims, under sections 2923.6 and 2923.7 of the Civil Code, are insufficient for failure to specify a purported material change to Amer's financial circumstances, as well as failure to allege that Amer "documented" such a change. *Id.* at 7–8. Wells Fargo also argues that Amer fails to allege material harm as a result of Wells Fargo's alleged failure to provide a denial letter, that Amer has not alleged he requested a single point of contact, and that section 2923.7 permits a servicer to designate a team of people as a "single point of contact." *Id.* at 8–9.

---

[2] All of Wells Fargo's exhibits discussed in this order are subject to judicial notice as public records whose authenticity is not disputed. Amer's opposition brief does not address whether judicial notice is appropriate.

With respect to Amer's negligence claim, Wells Fargo contends that its role as a lender and loan servicer does not give rise to a common law duty of care under California law, and that Amer cannot show proximate cause because he "had no right to a loan modification and no right to avoid foreclosure following a default." *Id.* at 10–12 (citing, *e.g.*, *Nymark v. Heart Fed. Savs. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991)). Wells Fargo argues that Amer's UCL claim should be dismissed because it is derivative of other defective claims and also for failure to allege that Amer suffered loss that is attributable to Wells Fargo rather than to his own failure to make loan payments. *Id.* at 12. As for Amer's claim that Wells Fargo failed to contact him before filing a notice of default in 2010, Wells Fargo argues that the applicable statute is Civil Code section 2923.5 rather than section 2923.55 (the latter having replaced the former in 2013, three years after the conduct at issue occurred), that Amer's claim is barred by section 2923.5's three-year statute of limitations, and that the loan modification review that Wells Fargo conducted much later, in 2016, satisfies Wells Fargo's obligations under the statute. *Id.* at 12–13. Finally, Wells Fargo contends that Amer's claim for an accounting should be dismissed because: (1) an accounting is a remedy, not an independent cause of action; (2) Amer has not alleged a fiduciary duty or other qualifying relationship required for an accounting under California law; (3) Amer does not seek to recover an amount that cannot be ascertained without an accounting; and (4) California Civil Code section 2943 does not apply here because a notice of default and notice of sale have been filed. *Id.* at 13–14.

### 2. Amer's Opposition Brief

Amer asserts—incorrectly, as discussed below—that "judicial estoppel is an umbrella term encompassing both 'claim preclusion' and 'issue preclusion,'" and that Wells Fargo fails to establish either preclusion doctrine, the former for lack of a "final judgment or order" and the latter for lack of issues "'actually litigated' and 'necessarily decided.'" Opp'n (dkt. 23) at 4–5. Amer also asserts that he was unaware of his present claims when he filed for bankruptcy, and argues that "just because there were bankruptcies filed, it does not mean that [Wells Fargo's] conduct in negligent review of the loan modification application and shuffling [Amer] from one representative to another should be excused." *Id.* at 5.

5

Amer argues that his section 2923.6 claim should go forward because determining the completeness of a modification application is usually inappropriate at the pleading stage. *Id.* at 6. He also argues that a "decline in income can constitute a material change in financial circumstances" sufficient to support a subsequent loan application, and that regardless of whether Wells Fargo was *required* to review Amer's modification application, it in fact did so, and a lender who agrees to undertake such a review is bound by the HBOR. *Id.* at 6–7. Amer contends that if Wells Fargo had declined to review the application, it was required to inform him of that decision and of his right to appeal, and that Wells Fargo's failure to send a written denial letter was a material violation because it deprived him of his right to appeal the decision. *Id.* at 7–8. Amer also cites district court decisions for the proposition that "every violation that undermines the purpose of the HBOR is a material violation." *Id.* at 8.

With respect to his claim under section 2923.7 for failure to provide a single point of contact, Amer again argues that any violation that undermines the HBOR is material, and also contends that dealing with multiple Wells Fargo representatives who lacked knowledge of his loan and modification application caused substantial delay that reduced his likelihood of ultimately obtaining a loan modification. *Id.* at 9–10.

Amer argues that his negligence claim should go forward because at least one California appellate court has departed from the general rule of *Nymark* that lenders do not owe a duty of care, holding instead that the factors set forth in *Biakanja v. Irving*, 49 Cal. 2d 647 (1958), can in some circumstances support imposing such a duty. Opp'n at 11–13 (citing *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1180 (2016)). Amer also states the legal standard for negligence per se, suggesting that he believes he should be able to proceed under that theory, but includes no analysis applying that standard to the facts of this case. *Id.* at 13.

Turning to his claim for failure to contact him before filing the notice of default, Amer states: "Plaintiff's FAC used the code--§2923.55. There is a typographical error in the body of the FAC citing to Section 2923.5, which is the mirror image of 2923.55." *Id.* Amer does not address Wells Fargo's contention that section 2923.55 had not yet taken effect at the time of the conduct at issue. *See id.*; Mot. at 12–13. He argues that the statute of limitations should be tolled

6

by the discovery rule and the continuing violation doctrine, and because, according to Amer, the point of accrual for this claim is Wells Fargo's "continuance with the foreclosure proceedings, including the recordation of [the notice of sale] and the impending foreclosure sale despite the violation of Civ. Code §2923.55." Opp'n at 14–15.[3]

Finally, Amer argues that his UCL claim should proceed based on the alleged violations of the HBOR, *id.* at 15–17, and that those violations caused him actionable harm because if Wells Fargo had "appointed a competent [single point of contact] and timely reviewed Plaintiff's request for foreclosure prevention alternative, Plaintiff could have avoided foreclosure proceedings and save [sic] her [sic] home by and through other loan modification or other foreclosure alternatives she [sic] could qualify for," *id.* at 17–18. Amer also contends that attorney's fees, costs, and similar expenses constitute sufficient injury to support a claim. *Id.* at 18. Amer requests leave to amend if the Court grants Wells Fargo's motion. *Id.* at 19.

### 3. Wells Fargo's Reply Brief

Wells Fargo argues again in its reply that Amer's claims are barred by judicial estoppel, contending that Amer's discussion of claim preclusion is inapposite. Reply (dkt. 26) at 1–3. According to Wells Fargo, Amer's representations on his bankruptcy schedules that he had no claims against Wells Fargo were "clearly inconsistent" with the position he takes in this litigation, the bankruptcy courts accepted those earlier representations, Amer would obtain an unfair advantage from being allowed to proceed on his claims, and courts have applied the doctrine of judicial estoppel in similar circumstances. *Id.* at 2–3.

Wells Fargo also reiterates its argument that Amer has not alleged that he sufficiently "documented" a change in financial circumstances to support a claim under the HBOR, noting that Amer's opposition does not address that issue. *Id.* at 4–5. Wells Fargo therefore contends that it was not required to provide a denial letter, and further argues that Amer has not alleged material

---

[3] Although addressing his section 2923.55 claim, Amer bases his discussion of the point of accrual on case law considering the UCL. *See* Opp'n at 14 ("Last but not least, the court in *Aryeh*, held that 'UCL is governed by common law accrual rules to the same extent as any other statute. That a cause of action is labeled a UCL claim is not dispositive . . . .'" (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1196 (2013)).

harm due to the absence of a denial letter because "there are no allegations of a completed foreclosure, and there are no allegations that [Amer] made any attempt to appeal the alleged denial." *Id.* at 5. Wells Fargo argues that Amer's section 2923.7 claim should be dismissed for similar reasons, as well as his failure to allege that he specifically requested a single point of contact. *Id.* at 5–6.

As for Amer's remaining claims, Wells Fargo argues that the Court should follow the majority view that no negligence duty of care attaches to a lender, *id.* at 6–7, and that the UCL claim should be dismissed for the same reasons as the underlying claims on which it relies and for failure to allege harm, because no foreclosure sale has yet occurred, *id.* at 7. Wells Fargo contends that the section 2923.5 or 2923.55 claim should be dismissed based on the statute of limitations, arguing that Amer's reliance on a subjective standard of when he discovered the claim misunderstands the discovery rule, which instead looks to when Amer *could have* discovered and brought the claim. *Id.* at 7–8. Wells Fargo notes that Amer's brief does not address his claim for an accounting, and argues that leave to amend should be denied as to all claims because Amer already amended his complaint once in lieu of opposing Wells Fargo's first motion and "has not offered any specific explanation how he would cure defects in the existing claims." *Id.* at 8.

## III.    ANALYSIS

### A.    Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Judicial Estoppel

The doctrine of judicial estoppel has developed "'to protect the integrity of the judicial process,' . . . by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citations omitted). Although the Supreme Court has declined to set a strict formulation of the rule, the Court has identified three factors that "typically inform the decision": (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750. Contrary to Amer's characterization of the doctrine in his opposition brief, *see* Opp'n at 4–5,[4] judicial estoppel is a "discrete doctrine"

---

[4] Aside from his misplaced arguments that the elements of claim and issue preclusion are not satisfied here, Amer's brief presents no argument or authority actually addressing the application of judicial estoppel. *See* Opp'n at 4–5. The case that Amer cites for his conflation of those preclusion doctrines with judicial estoppel does not actually mention judicial estoppel, instead

distinct from claim and issue preclusion. *New Hampshire*, 532 U.S. at 748–49.

In the bankruptcy context, the Ninth Circuit recognizes "a basic default rule" that where "a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action," because the bankruptcy court relied on the representation that the plaintiff did not have a claim. *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013); *see also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001) ("In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."). Even in cases where a debtor did not obtain a discharge, "[t]he bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways." *Hamilton*, 270 F.3d at 784.

Judicial estoppel may be inappropriate where a plaintiff omitted a claim from bankruptcy schedules due to "inadvertence or mistake." *Ah Quin*, 733 F.3d at 271–72. Unless the plaintiff has reopened the bankruptcy case to amend the schedules and cure the mistake, however, the exception is construed narrowly, and to defeat the exception a defendant need only show that the plaintiff "(1) knew of her claim and (2) had motive to conceal the claim from the bankruptcy court," with the latter element "true in practically all bankruptcy cases." *Id.* With respect to the knowledge element, "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (ellipsis in original; citations omitted); *see also Hamilton*, 270 F.3d at 784–85 (quoting *Coastal Plains* with approval, and stating that "estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to

---

stating that the California Supreme Court has "frequently used '*res judicata*' as an umbrella term encompassing both claim preclusion and issue preclusion." *See DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 823 (2015) (emphasis added).

amend his schedules or disclosure statements to identify the cause of action as a contingent asset").

Quite a few bankruptcy cases are at issue here. Wells Fargo cites no authority, however, that would apply judicial estoppel to Amer as a result of his wife's bankruptcy filings, or as a result of cases where Amer never filed schedules (and thus never represented that he had no claims). That leaves three cases where Amer filed schedules representing that he had no claims against Wells Fargo: (1) case number 4:11-bk-49220 (the "49220 Bankruptcy"), in which the bankruptcy court entered a discharge in November of 2014, *see* RJN Ex. P; (2) case number 4:15-bk-43827 (the "43827 Bankruptcy"), which was dismissed on the trustee's motion in January of 2016 after filing of a Chapter 13 plan, *see* RJN Ex. W; and (3) case number 4:16-bk-41697 (the "41697 Bankruptcy"), which was closed without discharge by final decree on November 22, 2016, *see* RJN Ex. X.

Amer's representation of no claims against Wells Fargo in the 49220 Bankruptcy estops him from bringing claims based on facts known to him during the pendency of that case, because the bankruptcy court relied on the representations in Amer's schedules when it confirmed Amer's Chapter 13 plan in 2013 and entered an order granting a discharge on November 13, 2014. *See* RJN Ex. P.

As for the subsequent bankruptcy proceedings, it is less obvious that Amer "succeeded in persuading a court to accept his earlier position" that he had no claims against Wells Fargo. *See New Hampshire*, 532 U.S. at 750. The only relevant court action that Wells Fargo identifies from those cases is the automatic stay. *See* Mot. at 6; Reply at 2–3. This Court has previously held that an automatic stay is not sufficient to meet that element of the test for estoppel, because a "stay would have been entered in the bankruptcy action regardless of whether [the debtor] listed any claims in [his or] her bankruptcy filings." *Perez v. Wells Fargo Bank, N.A.*, No. C-11-02279 JCS, 2011 WL 3809808, at *12 (N.D. Cal. Aug. 29, 2011). As Wells Fargo correctly notes, however, numerous other cases have held to the contrary. *See Natividad v. Resmae Mortg. Corp.*, No. 5:15-cv-02359-EJD, 2015 U.S. Dist. LEXIS 124641, at *5–7, 2015 WL 5544278 (N.D. Cal. Sept. 17, 2015); *Hannon v. Wells Fargo Bank, N.A.*, No. 14-CV-05381-LHK, 2015 U.S. Dist. LEXIS

11

106860, at *19, 2015 WL 4776305 (N.D. Cal. Aug. 13, 2015); *Sharp v. Nationstar Mortg., LLC*, No. 14-CV-00831-LHK, 2014 U.S. Dist. LEXIS 124096, at *14–16, 2014 WL 4365116 (N.D. Cal. Sept. 3, 2014); *Swendsen v. Ocwen Loan Servicing, LLC*, No. 2:13-cv-02082-TLN-CKD, 2014 U.S. Dist. LEXIS 37780, at *16–17 (E.D. Cal. Mar. 21, 2014); *Juarez v. Suntrust Mortg., Inc.*, No. CV F 13-0485 LJO SAB, 2013 U.S. Dist. LEXIS 67850, at *17–19, 2013 WL 1983111 (E.D. Cal. May 13, 2013); *HPG Corp. v. Aurora Loan Servs.*, 436 B.R. 569, 578–79 (E.D. Cal. 2010); *Caviness v. England*, No. CIV S-04-2388 GEB DAD, 2007 U.S. Dist. LEXIS 32696, at *37–38, 2007 WL 1302522 (E.D. Cal. May 3, 2007). A California appellate court holding that the automatic stay was sufficient for the "acceptance" element—which is present in the test under California law as well as federal law—observed that failure to list assets may have a practical effect by "discourag[ing] creditors from seeking to lift the automatic stay or have the petitions dismissed without discharge." *Thomas v. Gordon*, 85 Cal. App. 4th 113, 120 (2000).

Although this Court previously held to the contrary, the majority view that has continued to emerge in the years since the *Perez* decision represents a better interpretation of precedent and the equitable considerations underlying the doctrine of judicial estoppel. In *Hamilton*, the Ninth Circuit recognized that a "bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways" besides discharge of debts, and highlighted both the disruptive effect and the benefit to the debtor of the automatic stay:

> In this case, we must invoke judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules "impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*" The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding. Hamilton's failure to list his claims against State Farm as assets on his bankruptcy schedules deceived the bankruptcy court and Hamilton's creditors, who relied on the schedules to determine what action, if any, they would take in the matter. Hamilton did enjoy the benefit of both an automatic stay and a discharge of debt in his Chapter 7 bankruptcy proceeding. *See New Hampshire v. Maine,* 121 S.Ct. at 1815 (noting that courts may consider whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped). However, it is his failure to disclose assets on his bankruptcy schedules that provides the most

12

compelling reason to bar him from prosecuting claims against State Farm.

*Hamilton*, 270 F.3d at 784–85 (internal citations omitted).

It is difficult to square that reasoning with the view that a debtor who obtains an automatic stay after failing to disclose assets is not subject to estoppel. Moreover, while the presence or absence of assets does not in itself directly affect whether an automatic stay is imposed, *see Perez*, 2011 WL 3809808, at *12, the bankruptcy court nevertheless relies on the debtor filing a truthful schedule of assets, and will dismiss the case and lift the stay if the debtor fails to file the required schedules, *see* RJN Exs. O, T (docket sheets reflecting that two of Amer's bankruptcy cases were dismissed for failure to file schedules). In that sense, the bankruptcy court "accepted" the representations in Amer's schedules, including that he had no claims against Wells Fargo, when the court declined to summarily dismiss the 43827 Bankruptcy and 41697 Bankruptcy for failure to file those schedules—not to mention the extent to which Amer might have benefited from his creditors' acceptance of his purported lack of assets, *see Thomas*, 85 Cal. App. at 120. Finally, although holding that the judicial acceptance factor is satisfied here, the Court also notes that the Supreme Court declined to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel" when it listed in *New Hampshire* the factors that "typically inform the decision," and Amer's serial bankruptcy filings to forestall foreclosure constitute the sort of "improper use of judicial machinery" and "playing fast and loose with the courts" that the doctrine is intended to prevent. *See New Hampshire*, 532 U.S. at 750–51 (citations and internal quotation marks omitted). The Court concludes that Amer is barred by judicial estoppel from bringing claims that he omitted from his bankruptcy schedules.

The question, then, is whether Amer was aware of the operative facts of his present claims during the pendency of the 49220 Bankruptcy, the 43827 Bankruptcy, or the 41697 Bankruptcy, the last of which terminated on November 22, 2016. *See* RJN Ex. X (docket sheet from the 41697 Bankruptcy). Amer's fifth claim, under section 2923.55 (or 2923.5) of the Civil Code, rests on Wells Fargo recording a notice of default in 2010 without first contacting Amer as required by law. *See* FAC ¶¶ 92–101. Amer alleges that after he learned of the notice of default, he attempted "for years" to contact Wells Fargo about it before his financial circumstances changed in 2016. *Id.*

¶¶ 33–36. Amer therefore had "knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptc[ies]," and is estopped from bringing a section 2923.55 or 2923.5 claim that he failed to include on his bankruptcy schedules. *See Hamilton*, 270 F.3d at 784–85. Wells Fargo's motion is GRANTED as to that claim.

Amer's remaining claims implicate conduct extending past the termination of the 41697 Bankruptcy, such as recording a notice of sale in February of 2017 and continuing to fail to designate a single point of contact. Amer obviously could not have included claims in his bankruptcy schedules based on conduct that had not yet occurred. The Court therefore declines to dismiss those claims based on judicial estoppel. Amer is estopped, however, from basing those claims on facts that he was aware of before the termination of the 41697 Bankruptcy—for example, he cannot base a dual tracking claim under section 2923.6 on Wells Fargo recording the notice of default in 2010, nor could he base a UCL or negligence claim on Wells Fargo's purported violation of section 2923.5 (i.e., the same subject matter as his fully estopped fifth claim) even if his UCL and negligence claims were not also deficient for the reasons discussed separately below.

### C. Claim for Dual Tracking in Violation of § 2923.6

Wells Fargo argues, and Amer does not dispute, that Amer's allegations regarding a "significant change in his financial condition" imply that the loan modification application at issue was not Amer's first application, because such changed circumstances are only required for a subsequent application. *See* Cal. Civ. Code § 2923.6(g); FAC ¶¶ 56, 72; Mot. at 7; Opp'n at 6 (appearing to accept this premise by stating that "[s]ubsection (g) of Civ. Code §2923.6 allows a borrower to submit a subsequent loan modification [application] if there has been a material change in the borrower's financial circumstances since the borrower' previous application."). Wells Fargo contends that Amer's claim for improper dual tracking under section 2923.6 of the Civil Code is deficient for failing to allege that Amer "documented" his change in financial circumstances as required by subpart (g) of that statute. Mot. at 7–8; Reply at 4–5. This Court has previously held that a plaintiff must allege such documentation in order to state a claim that he submitted a complete second application requiring review under the statute. *Valentino v. Select*

14

*Portfolio Servicing, Inc.*, No. 14-cv-05043-JCS, 2015 WL 575385, at *4–5 (N.D. Cal. Feb. 10, 2015).

Amer is correct, however, that courts have in at least some cases interpreted the HBOR as providing protection from dual tracking where a loan servicer voluntarily undertakes to review a subsequent application, even if the servicer was not required by the statute to do so. Opp'n at 6; *Curtis v. Nationstar Mortg., LLC*, No. 14-cv-05167-HRL, 2015 WL 4941554, at *2–3 (N.D. Cal. Aug. 19, 2015); *Vasquez v. Bank of Am., N.A.*, No. 13-cv-02902-JST, 2013 WL 6001924, at *9 (N.D. Cal. Nov. 12, 2013).[5] Wells Fargo does not address this argument or those decisions in its reply. *See* Reply at 4–5. Section 2923.6(g) provides that a servicer "shall not be obligated to evaluate" subsequent applications that are not accompanied by documentation, but does not explicitly address whether the protection of the statute applies if a servicer voluntarily agrees to review such an application. Taking as true Amer's allegations (on information and belief) that Wells Fargo did not in fact deny the application at issue, that the statement of denial by a telephone representative was a mistake, and that Wells Fargo has continued with foreclosure activities "[d]espite the fact that Plaintiffs [sic] are in loan modification review," the Court holds the First Amended Complaint sufficient at the pleading stage to allege that Wells Fargo voluntarily undertook review of the application and violated the HBOR by recording a notice of sale while that review remained (and continues to remain) pending. *See* FAC ¶¶ 42–43.

If Amer wishes to proceed on the alternative theory that Wells Fargo was *required* to review the application, he must amend his complaint to include sufficient allegations that he submitted a complete application, supported by documentation of a material change in financial circumstances, and he might choose to attach his application materials to the complaint to reduce the risk of insufficient pleading. If Amer amends his complaint to pursue that theory but does not attach those materials, Wells Fargo might choose to request judicial notice of Amer's application

_____

[5] Amer also cites a decision from the Central District of California for this proposition, but that case does not appear to discuss the question at issue, i.e., whether a servicer voluntarily reviewing an application triggers the protections of the HBOR where the servicer was not required to do so. *See* Opp'n at 6; *Norris v. Bayview Loan Servicing, LLC*, No. CV 15-06413-MWF (DTBx), 2016 WL 337381, at *3 (C.D. Cal. Jan. 25, 2016).

under the doctrine of incorporation by reference.  *See Valentino*, 2015 WL 575385, at *6 ("If the case goes forward, both parties may wish to consider providing the documents at issue, to more efficiently determine whether Valentino *has* a claim as opposed to merely whether he has correctly *stated* one.").

Wells Fargo also argues that Amer has not sufficiently alleged a material violation of the statute, citing a case in which a district court dismissed a claim for failure to contact the plaintiff before recording a notice of default under section 2923.55 because the plaintiff did not articulate how that deficiency actually affected her loan or a request for modification.  *See* Reply at 5; *Richardson v. Wells Fargo Bank, N.A.*, No. EDCV 16-873-VAP (KKx), 2016 U.S. Dist. LEXIS 107090, at *24 (C.D. Cal. Aug. 11, 2016).  With respect to a claim for dual tracking a notice of sale in violation of section 2923.6, however, the Court agrees with the following analysis from a 2015 decision by Judge White:

> Defendant also argues that Plaintiff fails to allege a "material violation" of the statute, as required by California Civil Code section 2924.12. As Defendant concedes, there is a dearth of authority interpreting the meaning of "material." In the absence of any authority defining the meaning of a "material violation," the Court declines to impose any additional pleading obligations on Plaintiff. The Court notes that one of the purposes of the Homeowners Bill of Rights ("HBOR") was to eliminate the practice of "dual-tracking." *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013); *Jolly v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 904 (2013). In light of this purpose, the Court cannot say that alleging that Defendant filed a notice of default while Plaintiff's complete application for a loan modification was pending would not qualify as a material violation.

*Greene v. Wells Fargo Bank, N.A.*, No. C 15-00048 JSW, 2015 WL 2159460, at *3 (N.D. Cal. May 7, 2015).  Wells Fargo's motion is DENIED as to Amer's claim under section 2923.6 to the extent that it is based on the theory that Wells Fargo voluntarily committed to review Amer's modification application, but GRANTED to the extent it is based on a theory that Wells Fargo was required to review the application.

**D.    Claim for Failure to Provide a Single Point of Contact in Violation of § 2923.7**

Section 2923.7(a) of the California Civil Code provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly

16

1    establish a single point of contact and provide to the borrower one or more direct means of

2    communication with the single point of contact." Cal Civ. Code § 2923.7(a). The statute also

3    imposes certain responsibilities on the single point of contact, and provides that a "team of

4    personnel" can serve a single point of contact so long as each member of the team is capable of

5    carrying out those responsibilities. *Id.* § 2923.7(b), (d), (e).

6          Among other arguments, Wells Fargo contends that Amer's claim under this statute should

7    be dismissed because Amer has not alleged that he requested a single point of contact. *See* Mot. at

8    9; Reply at 5–6. Amer does not address that argument in his opposition. *See* Opp'n at 8–10. The

9    plain language of the statute states that a servicer need only provide a single point of contact

10   "[u]pon request," Cal. Civ. Code § 2923.7(a), and courts have dismissed claims for failure to

11   allege such a request. *E.g.*, *Garcia v. PNC Mortg.*, No. C 14-3543 PJH, 2015 U.S. Dist. LEXIS

12   15422, at *13 (N.D. Cal. Feb. 9, 2015); *Diamos v. Specialized Loan Servicing LLC*, No.

13   13-cv-04997 NC, 2014 U.S. Dist. LEXIS 158092, at *9, 2014 WL 5810453 (N.D. Cal. Nov. 7,

14   2014). Wells Fargo's motion is therefore GRANTED as to Amer's second claim, which is

15   DISMISSED with leave to amend. Although the Court does not reach Wells Fargo's remaining

16   arguments regarding this claim, Amer should consider those arguments if he chooses to amend,

17   and include any factual allegations relevant to them.

18        **E.    Negligence Claim**

19         The parties dispute whether, under California law, a lender owes a borrower a duty of care

20   sufficient to support a negligence claim. Traditionally, California courts have held that, "as a

21   general rule, a financial institution owes no duty of care to a borrower when the institution's

22   involvement in the loan transaction does not exceed the scope of its conventional role as a mere

23   lender of money." *Nymark*, 231 Cal. App. 3d at 1096. Amer is correct that some recent decisions

24   have held that such a duty can apply in the context of loan modifications. *E.g., Daniels*, 246 Cal.

25   App. 4th at 1180–83 (applying the factors set forth in *Biakanja*, 49 Cal. 2d 647). A number of

26   courts have declined to follow the reasoning of those decisions, however, instead following

27   decisions such as *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49 (2013), which

28   rejected imposition of a duty of care in this context because "a loan modification is the

renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money," and "[t]he *Biakanja* factors do not support imposition of a common law duty to offer or approve a loan modification." *Lueras*, 221 Cal. App. 4th at 67; *see, e.g.*, *Deschaine v. IndyMac Mortg. Servs.*, 617 F. App'x 690, 693 (9th Cir. 2015); *Willis v. JPMorgan Chase Bank, N.A.*, 250 F. Supp. 3d 628, 633 (E.D. Cal. 2017); *Marques v. Wells Fargo Bank, N.A.*, No. 16-CV-03973-YGR, 2016 WL 5942329, at *6 (N.D. Cal. Oct. 13, 2016). The California Supreme Court has not resolved the issue.

This Court previously addressed the split of authority on this issue, albeit before some of the more recent cases were decided, and "agree[d] with those cases holding that a financial institution does not owe a borrower a duty of care in these circumstances because the loan modification process is a traditional money lending activity." *Reiydelle v. J.P. Morgan Chase Bank, N.A.*, No. 12-cv-06543-JCS, 2014 WL 312348, at *17–19 (N.D. Cal. Jan. 28, 2014). The Court again holds that California law does not support a common law duty of care in these circumstances, particularly in light of the comprehensive statutory scheme governing servicers' duties in the context of modification requests. Wells Fargo's motion is GRANTED as to Amer's negligence claim, which is DISMISSED with prejudice.[6]

### F. UCL Claim

Amer's fourth claim is for unfair and unlawful business practices under the UCL based on the same conduct at issue in his other claims. Wells Fargo moves to dismiss this claim for the same reasons as the underlying claims, and for failure to allege an actionable injury under California Business and Professions Code section 17204, which requires that private plaintiff bringing a claim under the UCL "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

The Court agrees that this claim must be dismissed as to the theories corresponding to

---

[6] The Court agrees with Wells Fargo that the doctrine of negligence per se is not relevant to the inquiry of whether Wells Fargo had a common law duty of care, because that doctrine merely "creates an evidentiary presumption" and "there still must be a valid underlying cause of action for negligence for the doctrine to apply," meaning that the defendant "must have owed a duty of care to [the plaintiff]." *Millard v. Biosources, Inc.*, 156 Cal. App. 4th 1338, 1353 & n.2 (2007).

Amer's section 2923.5 (or section 2923.55) claim and section 2923.7 claim for the same reasons as the underlying statutory claims—Amer is judicially estopped from bringing a claim for failure to contact him before recording a notice of default, and he does not allege that he requested a single point of contact. To the extent that Amer bases a UCL claim on failure to send written notice of denial, which he appears to plead in the alternative to his allegation that Wells Fargo has not actually denied his claim, *see* FAC ¶¶ 60, 89, he is judicially estopped from bringing that claim as well, because the telephone conversation in which a Wells Fargo representative told him his claim had been denied preceded the termination of the 41697 Bankruptcy, in which he represented that his assets did not include any claims against Wells Fargo, *id.* ¶ 59; RJN Exs. X, Y. Wells Fargo's motion is therefore GRANTED as to the UCL claim to the extent that it is based on those theories.

With respect to Amer's theory that Wells Fargo violated the UCL by violating section 2923.6, the Court concludes for the reasons discussed above that the underlying claim is sufficient to proceed, but agrees with Wells Fargo that Amer cannot establish causation sufficient for standing under the UCL. A California appellate court summarized the UCL's standing requirement in *Jenkins v. JP Morgan Chase Bank, N.A.*, a case on which Amer relies here:

> Although the UCL's "substantive reach . . . remains expansive. . . ," the approval of Proposition 64 by the California electorate in November 2004 "substantially revised the UCL's standing requirement" for private individuals. (*Kwikset Corp.* [*v. Superior Court*, 51 Cal. 4th 310, 320 (2011)] [finding voters "materially curtailed the universe of those who may enforce" the UCL's provisions].) Before the approval of Proposition 64, Business and Professions Code section 17204 authorized "any person acting for the interests of itself, its members or the general public" to bring a UCL action. (Bus. & Prof. Code, former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198.) Today, in light of the amendments enacted by Proposition 64, Business and Professions Code section 17204 restricts private standing to bring a UCL action to "a person who has *suffered injury in fact* and has *lost money or property* as a *result* of the unfair competition." (Bus. & Prof. Code, § 17204, italics added, as amended by Prop. 64, § 3, as approved by voters, Gen. Elec. (Nov. 2, 2004).)

*Jenkins*, 216 Cal. App. 4th 497, 520–21 (2013) (second set of brackets in original), *disapproved on other grounds by Yvana v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016).

Although *Jenkins* tends to support the proposition that Amer's allegation of impending

foreclosure is a *type* of injury cognizable under the UCL, *see id.* at 521–22, it also supports Wells Fargo's position that Amer has not alleged sufficient causation. Like in this case, the plaintiff in *Jenkins* defaulted on her loan before the defendant took any alleged wrongful action. *Id.* at 523. The court held that the plaintiff's default, rather than the defendant's conduct, was the cause of her injury:

> Importantly, Jenkins admits in both her SAC and opening brief that she defaulted on her loan. It is also indisputable Jenkins's default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected Jenkins's home to nonjudicial foreclosure. Moreover, Jenkins's SAC and opening brief acknowledge her default occurred *prior to* the six unlawful or unfair acts she alleges as the basis of her UCL action. As Jenkins's home was subject to nonjudicial foreclosure because of Jenkins's default on her loan, which occurred before Defendants' alleged wrongful acts, Jenkins cannot assert the impending foreclosure of her home (i.e., her alleged economic injury) was caused by Defendants' wrongful actions. Thus, even if we assume Jenkins's third cause of action alleges facts indicating Defendants' actions violated at least one of the UCL's three unfair competition prongs (unlawful, unfair, or fraudulent), Jenkins's SAC cannot show any of the alleged violations have a causal link to her economic injury. In light of these facts, we conclude the demurrer to Jenkins's third cause of action was proper.

*Id.*; *see also, e.g.*, *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2011 U.S. Dist. LEXIS 8296, at *19–21, 2011 WL 311376 (N.D. Cal. 2011) ("Without some factual basis suggesting that Plaintiffs could have cured the default in the fall of 2009, the Court cannot reasonably infer that Wells Fargo's alleged misrepresentations resulted in the loss of Plaintiffs' home. Rather, the facts alleged suggest that Plaintiffs lost their home because they became unable to keep up with monthly payments and lacked the financial resources to cure the default.").

Here, like in *Jenkins*, Amer alleges that he defaulted on his loan because he "began to experience financial hardship in 2009" and "began falling behind on the mortgage payments in 2010" after he "depleted his resources." FAC ¶ 30. Other than *Jenkins*—which counsels against Amer on this point—the only other UCL case that Amer cites for the issue of injury and causation is *Lester v. J.P. Morgan Chase Bank*, No. C 12-05491 LB, 2013 U.S. Dist. LEXIS 86420, at *38

(N.D. Cal. June 18, 2013).[7]  In that case, however, Judge Beeler relied on the plaintiff having "clearly allege[d] that he only defaulted because [the defendant] told him that he had to so he could apply for a [trial payment plan] and then, upon receiving a [trial payment plan] and completing its requirements, get a permanent loan modification." *Id.* at *38.  Amer alleges no comparable conduct by Wells Fargo contributing to his initial default.  His UCL claim is therefore DISMISSED for lack of statutory standing.  Although it is difficult to see how Amer could cure that defect without contradicting his present allegation that he defaulted due to lack of resources, in an abundance of caution, the Court grants leave to amend as to this claim.

The portion of Amer's complaint asserting his UCL claim also lists various purportedly wrongful acts not explicitly tied to any statutory requirement.  *See* FAC ¶ 89 (alleging, for example, that Wells Fargo "failed to review Plaintiff's loan modification application in a timely manner").  Amer's opposition brief focuses only on the theories that Wells Fargo "engaged in 'unfair' and 'unlawful' business acts or practices by violating Cal. Civ. Code §§2923.6, 2923.7." Opp'n at 16.  To the extent that Amer has not waived his other theories by failing to address them in his brief, they suffer from the same defect in standing discussed above and therefore must also be DISMISSED.

## G.    Claim for an Accounting

Amer does not address Wells Fargo's arguments regarding his final claim, for an accounting.  An accounting "is not an independent cause of action but merely a type of remedy." *Batt v. City & County of San Francisco*, 155 Cal. App. 4th 65, 82 (2007) (citation omitted), *disapproved on other grounds by McWilliams v. City of Long Beach*, 56 Cal. 4th 613 (2013).  The Court finds Wells Fargo's objections to the *remedy* of accounting, as might be appropriate under a different claim, to be premature.  Amer's sixth claim is therefore DISMISSED without leave to amend, but without prejudice to Amer showing at a later stage that he is entitled to the remedy of an accounting under a surviving claim.

---

[7] One other case that Amer cites in this section of his brief, *Shaw v. Specialized Loan Servicing*, No. CV 14-00783 MMM (MRWx), 2014 WL 3362359 (C.D. Cal. July 9, 2014), does not address the UCL and thus has no bearing on this issue.

## IV.    CONCLUSION

For the reasons discussed above, Wells Fargo's motion is GRANTED in part and DENIED in part, and all of Amer's claims except his first (under section 2923.6 of the California Civil Code, to the extent based on a theory that Wells Fargo *voluntarily* reviewed Amer's application) are hereby DISMISSED.  Amer may amend his complaint no later than November 13, 2017 if he is aware of additional facts sufficient to cure the defects identified herein with respect to his second and fourth claims (under section 2923.7 and the UCL, respectively) and with respect to his first claim to the extent he wishes to pursue a theory that Wells Fargo was *required* to review his modification application.  Leave to amend is denied as to the remaining claims because amendment would be futile.

**IT IS SO ORDERED.**

Dated: October 27, 2017

JOSEPH C. SPERO
Chief Magistrate Judge